JAMES T. STOKES AND GEORGE MYERS, RESPONDENTS, *v.* C. J. STEVENS, EDWARD A. ANDERSON, AND JAS. A. TREFRY, APPELLANTS.

PARTNERSHIP.—POWER OF ONE PARTNER TO CONVEY.—REMEDY IN EQUITY.—A copartner has authority to convey the copartnership property in any transaction, within the scope of the partnership, and each copartner has an unlimited power of disposal of his share of the partnership property, subject only to the claims of creditors of the firm, and of the other copartners on a settlement of the partnership affairs, unless he be restrained from so doing by the terms of the copartnership; but the claims of such creditors, and copartners, being only in the nature of an equitable lien, on the partnership property, can only be enforced in a Court of Equity

IDEM.—INCOMPETENCE OF COURT OF LAW TO ADJUST AFFAIRS OF.—A Court of Law is not competent to administer redress, in adjusting the affairs of a partnership, and to ascertain and enforce the equitable liens of creditors, and of the several copartners.

IDEM.—EFFECT OF CONVEYANCE OF ONE PARTNERS INTEREST.—Where one partner without the consent of his copartner, conveys his interest in the partnership property, to another, the latter becomes a tenant in common with the copartner, and the claim of a creditor of the firm can only be asserted to the property as against the third party in possession, in a Court of Equity.

IDEM.—REPLEVIN BY PURCHASER OF PARTNERSHIP PROPERTY, ATTACHED BY CREDITOR OF THE FIRM.—PRESUMPTION IN FAVOR OF JUDGMENT.—Where one partner *bona fide*, sold the partnership property to satisfy his individual indebtedness, and in an action of replevin by the purchaser against a creditor of the firm who has attached the property, after the sale and delivery, as the firm property, and for a firm debt; the Court properly rendered a judgment for the purchaser; and it will be presumed in support of the judgment, that the Court below found it as a fact that the other partner consented to, and authorized the sale.

APPEAL from the Third Judicial District, County of Alameda, California.

Judgment for Plaintiffs.    Defendants appeal.

The facts are stated in the opinion of the Court.

*Benj. Williams & A. M. Crane,* for Appellants.

The partnership creditors must in any event, be first paid from the partnership assets before the creditor of an individual partner. (*Chase* v. *Steel,* 9 Cal. 64; *Burpee* v. *Burn,* 22 Id. 194; *Collins* v. *Hood,* 4 McLean, 186; *Coote* v. *Bank,* U. S. 3 Cranch. 95.)

*A. H. Griffith,* for Respondents.

The defendant in an attachment suit must be alleged to be the owner of the goods seized. *(Richardson* v. *Smith,* 29 Cal. 529.)

The contract of each partner will bind his copartners, where it falls within the scope of the partnership business. (1 Parsons on Contracts, 156, 157.)

*Benj. Williams and A. M. Crane,* for Appellants in reply:

When plaintiffs bought out one partner, what did they buy? Simply the individual interest of the partner, subject to the payment of the partnership debts; therefore plaintiffs took nothing by their purchase, for they but placed themselves in the selling partner's shoes. It would be different if the sale had been for cash, and the purchaser not chargeable with fraud, but in this case plaintiffs (respondents) took the partnership grain in payment of the private debt of one of the partners to them, and were necessarily not purchasers in good faith. The creditors of the firm show partnership debts due them, and that at the time of the sale by Neuart to plaintiffs in payment of his precedent debt, the partnership was insolvent—and this is the gist of the case—and is, in substance all there is in it.

CROCKETT, J., delivered the following opinion, WALLACE, J., concurring:

The action is replevin to recover a quantity of grain in sacks; and the plaintiffs having recovered a judgment, the defendants have appealed on the judgment, the defendants have appealed on the judgment-roll alone. From the findings it appears that the grain was grown by Neuart & Young, as partners, during the season of 1869; that in June of that year Neuart, in satisfaction of his individual indebtedness to the plaintiffs, sold them the grain in controversy, then growing in the field, and agreed to harvest, thresh, sack and deliver it for the plaintiffs, at Anderson's warehouse, and to take the warehouse receipt therefor in

the name of the plaintiffs; that in accordance with this agreement the grain was harvested, threshed, sacked and delivered by Neuart, for the plaintiffs, at the warehouse on the 18th September, 1869; and the warehouse receipt therefor was taken in the plaintiffs' names; that at the time of the delivery Neuart & Young were insolvent and unable to pay their partnership debts; that "afterwards, in September, 1869," Neuart & Young became indebted to the defendants Stevens & McKeown, as alleged in the defendants' answers. By reference to the answers it appears that between the 1st of November, 1868, and the 1st of September, 1869, Neuart & Young, as copartners, became indebted to Stevens for certain goods, wares and merchandise, and to McKeown for certain blacksmith's work, all of which, it is alleged, were used by Neuart & Young in planting, raising and harvesting a crop of grain, of which that which is in contest in this action is a part. From these averments it may be inferred that at least some portion of the indebtedness accrued before the sale by Neuart to the plaintiffs in June, 1869. Stevens & McKeown sued out attachments to recover this indebtedness, which were levied on the grain at the warehouse as the property of Neuart & Young; and that the sale from Neuart to the plaintiffs in June, 1869, was not made to hinder, delay or defraud his creditors. These being the facts, the Court properly rendered a judgment for the plaintiffs. It does not appear from the findings but that, at the time of the sale from Neuart to the plaintiffs, the firm of Neuart & Young was perfectly solvent, nor that they were in any manner indebted, unless it be to Stevens & McKeown, as already stated; and it affirmatively appears that the attachments did not issue until the grain had been actually delivered and the warehouse receipts taken in the name of the plaintiffs. On behalf of the defendants it is contended that the sale to the plaintiffs was absolutely void, and passed no title, either legal or equitable, as against Stevens & McKeown, who were creditors of the firm of Neuart & Young; that Neuart had no power to pass the legal title to any of the

partnership assets in payment of his individual debt as against the creditors of the firm. But I do not so understand the law. The legal title to partnership property is in the copartners, either of whom has authority to convey it in any transaction within the scope of the partnership. It is equally plain that each copartner has an unlimited power of disposition of his share of the partnership property, subject only to the claims of creditors of the firm, and of the other copartners on a settlement of the partnership affairs. If the firm owes no debts, and if there be nothing due from one of the copartners to the others, he clearly has the right, at his option, to sell and convey his interest in the partnership property, unless he be restrained from so doing by the terms of the copartnership. But the claims of the creditors of the firm, and of the other copartners, are only in the nature of an equitable lien on the partnership property, for the security, in the one case, of the demands of the creditors, and in the other, of the remaining copartners, for any balance found to be due to them on a settlement of the partnership affairs. This lien can only be asserted in a Court of equity, which has the adequate machinery for winding up the partnership, marshaling the assets and ascertaining the debts due from the firm, and the balances, if any, due to the several copartners. A Court of law is not competent to administer this form of redress, to adjust the affairs of the partnership and to ascertain and enforce the equitable liens of creditors and of the several copartners. This is the peculiar province of a Court of equity, which can call before it all the parties in interest and administer complete redress. So long as the legal title of the partnership property remains in the copartners, a creditor of the firm may pursue his remedy against it, in an action at law, in the same manner as against an individual debtor. But if the legal title has been conveyed to a third person *bona fide*, the creditor can pursue the property only by a bill in equity to marshal the assets and enforce his equitable lien. The defendants in this case did not pursue this remedy, but, treating the sale to the plaintiffs as absolutely void, have

seized the property under an attachment at law.   It may be said, however, that, even though it be conceded that Neuart had the power to convey to the plaintiffs the legal title to his own interest in the grain in payment of his own individual debt, he had no power to convey the legal title to Young's interest for such a purpose; and, consequently, that Young's interest remained unaffected by the sale to the plaintiffs, and was, therefore, subject to the attachment.

But if it be admitted that the legal title to Neuart's interest only passed to the plaintiffs, the result of the transaction was to constitute the plaintiff's tenants in common with Young of the legal title, subject to the claim of the creditors of the firm, which, as we have seen, could only be asserted, as against the plaintiffs, in a Court of equity; and the plaintiffs, being in possession, had the right to retain it as against their co-tenant, Young, or any one claiming under him.   If Young's interest was subject to seizure under attachment, the levy should have been upon that interest only, and not upon the whole of the grain, thereby ignoring the plaintiffs' title to any part of it.   But it may be, that Young consented to the sale by Neuart to the plaintiffs, and if so, they acquired thereby the legal title to the whole.   It is clear, that if Young consented to, or authorized the sale of the grain, by Neuart to the plaintiffs, they acquired the legal title of the whole; and we must presume, in support of the judgment, that the Court found it as a fact, that Young did so consent to and authorize the sale.   For these reasons, I think the defendants have mistaken their remedy, and that the judgment ought to be affirmed.

And it is so ordered.

We concur in the judgment: TEMPLE, J., RHODES, C. J.

SPRAGUE, J., expressed no opinion.